ams

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

FRANK J. WILKINS,                          )
                                          )
                  Plaintiff,          )
                                          )
vs.                                        )
                                          )          Case No. 02-3190-JAR
OREN SKILES, et al.,                       )
                                          )
                Defendants.         )
_____)

## MEMORANDUM AND ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, a prisoner proceeding *pro se*, filed this action against the following defendants claiming violations of his civil rights: Oren Skiles, former Chief of Police for the Arkansas City Police Department (ACPD); John Baucom and Ed Santiago, former detectives for the ACPD; and Gary Foiles, former Cowley County Attorney.[1]  Specifically, plaintiff claims that defendants violated the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution in  illegally seizing his personal property.

This matter comes before the Court on defendants' Motion for Summary Judgment (Doc. 139). In addition to the response and reply memoranda, the Court will consider plaintiff's Second Opposition (Doc. 148), despite plaintiff's failure to abide by the local rules of this district in seeking prior leave of

---

[1]Plaintiff originally filed this action against two additional defendants: Wah-leeta Rogers and Karen Iverson, who were officials with the Cowley County District Court Clerk's Office.  The Court previously dismissed these defendants from the case (Docs. 68, 127).

Court to file such a document.[2]  The Court has reviewed the record and determines that defendant

Foiles is absolutely immune from suit because he enjoys judicial immunity for "judicial acts" performed

in his capacity as the Cowley County Attorney.  The Court grants defendants' motion for summary

judgment as to the remaining defendants because plaintiff fails to allege facts sufficient to show that

these defendants violated his constitutional rights.

## I.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."[3]  A fact is only

material under this standard if a dispute over it would affect the outcome of the suit.[4]  An issue is only

genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[5]  The inquiry

essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party

must prevail as a matter of law."[6]

The moving party bears the initial burden of providing the court with the basis for the motion

and identifying those portions of the record that show the absence of a genuine issue of material fact.[7]

---

[2]*See* D. Kan. R. 6.1; 7.1; 15.1.

[3]Fed. R. Civ. P. 56(c).

[4]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5]*Id.*

[6]*Id.* at 251-52.

[7]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[8]

The burden may be met by showing that there is no evidence to support the nonmoving party's case.[9]

If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific

facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could

find for the nonmovant."[10]   When examining the underlying facts of the case, the Court is cognizant that

all inferences must be viewed in the light most favorable to the nonmoving party and that it may not

make credibility determinations or weigh the evidence.[11]

     The Court must construe *pro se* pleadings liberally and apply a less stringent standard than that

which is applicable to attorneys.[12]   However, the Court may not provide additional factual allegations

"to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[13]   The Court

need only accept as true plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[14]

## II.  Undisputed Facts

     Plaintiff Frank Wilkins and Orvel Nathan Ray were arrested on November 25, 1996 while

attempting to burglarize a pawn shop owned and operated by Bill and Jo Ann Sheldon in Arkansas

City, Kansas.  After their arrest, plaintiff and Ray were detained at the Cowley County jail. Several

---

[8]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[9]*Id.*

[10]*Id.*

[11]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[12]*Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[13]*Id.*

[14]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

other inmates claim to have heard them planning a robbery of the Sheldons' residence after their

release, and conveyed this information to ACPD detectives.

On December 16, 1996 Jo Ann Sheldon reported to the ACPD that a male and one other

individual who she was unable to identify, forced their way into her home in Arkansas City.  The

individuals bound and blindfolded her and then robbed and ransacked the residence.  On December

23, 1996, the Wichita, Kansas Police Department (WPD) arrested plaintiff on a state parole violation

and one charge of kidnaping in connection with the robbery at the Sheldon's residence.  Officials with

the WPD seized, incident to plaintiff's arrest, several items from his vehicle and person, which were

then transferred to and maintained in the WPD evidence room.

On December 31, 1996, defendant Baucom obtained a search warrant for the WPD evidence

room.  The warrant specified that there was probable cause to find certain items believed to be stolen

from the Sheldon residence during the December 16 robbery or involved in the robbery, including cash.

It was signed by a judge and plaintiff received a copy of the search warrant after it was executed.[15]

Defendants Baucom and Santiago executed the search warrant on January 2, 1997, and located all of

the items listed in the warrant.  Police then transferred the property listed on the warrant to the ACPD

evidence room.  The return portion of the search warrant states that a copy of the warrant was left with

Janet Syms as a "receipt particularly describing each such article seized from such person and held,

such person being detained or arrested in connection with this search."  Underneath that section of the

warrant is space for a judge or clerk to indicate that the warrant was "Subscribed and sworn to and

---

[15]The record includes two versions of the search warrant.  Plaintiff attaches his copy to his response
memorandum, while defendants attach their copy to the motion.  It does not appear that the original court copy of
the search warrant is included in the record.

returned before me." Neither copy of the warrant in the summary judgment record contains a signature on this portion of the return.

Plaintiff was subsequently convicted in state court of burglary, theft, conspiracy to commit aggravated robbery, aggravated robbery, aggravated burglary, and kidnaping.[16]  He is currently serving his sentence on these convictions and has exhausted the state court direct appeal process.  In February 2002, defendant Gary Foiles, who was the Cowley County Attorney, submitted to Cowley County District Court Judge Bishop, an authorization for release of personal property; but Judge Bishop did not execute a release of the property.  There is no evidence of any forfeiture proceeding instituted by the state against any of the personal property seized from the WPD evidence room.

## III.  Discussion

Plaintiff seeks relief against these defendants in their individual capacities under 42 U.S.C. § 1983, claiming his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments have been violated.  In support of these claims, plaintiff asserts that the defendants executed an invalid warrant, depriving him of his personal property.  Specifically, plaintiff contends that the warrant is invalid and violates the Fourth Amendment because defendants failed to comply with K.S.A. § 22-2505, the Kansas statute that requires a duplicate copy of the warrant to be left with the person from whom things are seized after execution.  He contends that despite the fact that his state criminal case is now complete, defendants have failed to return personal property that should rightfully be returned to him.  Defendants seek summary judgment on the basis of absolute and qualified immunity and on the

---

[16]  *See State v. Wilkins*, 7 P.3d 252, 258 (Kan. 2000) (reciting procedural history of criminal case on direct appeal).

merits.

Under 42 U.S.C. § 1983, a government official may be sued in his or her individual capacity for official actions taken under color of state law.[17]  In order to establish individual liability in a § 1983 suit, a plaintiff only need show that the official, "acting under color of state law, caused the deprivation of a federal right."[18]  A defendant sued in his individual capacity may be able to assert personal immunity defenses such as qualified immunity.[19]

As set forth in detail below, the Court finds that defendant Foiles is absolutely immune from suit in his individual capacity.  Plaintiff has failed to allege sufficient facts to establish a constitutional violation by the remaining defendants, therefore, the Court need not address their claims of qualified immunity.

## A.  Defendant Foiles

Plaintiff alleges that in 1997, his attorney wrote him a letter stating that the district attorney was willing to return some of the items seized, but that plaintiff must abandon his claim to any of the cash at issue.  It is undisputed that in February 2002, defendant Foiles submitted an authorization to Judge Bishop seeking release of personal property to plaintiff; however, Judge Bishop never executed that release.  The acts complained of, sending correspondence to defense counsel and filing an authorization that was not approved by a judge, are actions quintessentially within the scope of prosecutorial functions.  These actions are thus shielded by the absolute immunity accorded actions that are intimately

---

[17]*Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

[18]*Id.* at 165.

[19]*Id.*

6

associated with the judicial process.[20]

The availability of absolute immunity depends on the nature of the function performed by the prosecutor.[21] Actions performed as an advocate are cloaked with absolute immunity; actions that are administrative or investigatory in nature and function are entitled to only qualified immunity.[22]  The Tenth Circuit instructs courts to apply a continuum-based approach to absolute prosecutorial immunity, stating that "[t]he more distant a function is from the judicial process and the initiation and presentation of the state's case, the less likely it is that absolute immunity will attach."[23]  On the scant facts alleged by plaintiff with regard to defendant Foiles, it is evident that the functions in dispute were judicial functions, and not administrative or investigatory in nature.  Therefore, defendant Foiles is absolutely immune from suit.

### B.  Defendants Baucom, and Santiago

Defendants Skiles, Baucom, and Santiago claim that they are shielded from suit in their individual capacities by qualified immunity.  In *Harlow v. Fitzgerald*,[24] the Supreme Court explained that qualified immunity shields government officials from liability for damages incurred in the performance of discretionary functions as long as their conduct does not violate "clearly established

---

[20]*See West v. City of Parsons*, 983 F. Supp. 1027, 1031 (quoting  *DiCesare v. Stuart*, 12 F.3d 973, 977 (10th Cir. 1993) ("A prosecutor is entitled to absolute immunity when his activities are intimately associated with the judicial phase of the criminal process.").

[21]*Kalina v. Fletcher*, 522 U.S. 118, 127 (1997).

[22]*See Buckley v. Fitzsimmons*, 509 U.S. 259, 273-74 (1993).

[23]*Scott v. Hern*, 216 F.3d 897, 908 (10th Cir. 2000) (citation omitted).

[24]457 U.S. 800, 818 (1982).

statutory or constitutional rights of which a reasonable person would have known."[25]  Courts employ an objective standard, evaluating the official's conduct in light of the state of the law at the time of the purported constitutional or statutory violation.[26]

The Court reviews summary judgment motions involving qualified immunity claims differently than standard summary judgment motions because of the purpose behind qualified immunity.[27] Qualified immunity is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."[28]  Upon a defendant's assertion of a qualified immunity defense in a summary judgment motion, plaintiff has a two-part burden.  Plaintiff must come forward with facts or allegations that the defendant's conduct was a violation of a clearly established constitutional or statutory right at the time of its occurrence and that the violated right was "clearly established such that a reasonable person in the defendant's position would have known the conduct violated the right."[29]  The issue of immunity is a legal one and the Court may not avoid it by framing it as a factual issue.[30]

The Supreme Court counsels that before addressing the issue of qualified immunity, the Court must first consider: "Taken in the light most favorable to the party asserting the injury, do the facts

---

[25]*Id.*

[26]*Id.*

[27]*See, e.g., Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1311-12 (10th Cir. 2002).

[28]*Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

[29]*Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997); *see Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 646 (10th Cir. 1988).

[30]*Lawmaster*, 125 F.3d at 1347.

alleged show the officer's conduct violated a constitutional right?"[31]  As explained below, plaintiff has

failed to allege such facts.  Therefore, the Court need not determine whether the allegedly violated rights

were "clearly established," as plaintiff urges.


### 1. Fourth Amendment

Plaintiff argues that by violating a Kansas statute on duplicate warrant copies, defendants

violated his Fourth Amendment rights.  He argues that he has a possessory interest in the personal

property and cash that were seized and that since this property is no longer needed for trial, it should be

returned to him.  Defendants maintain that plaintiff lacks standing to challenge the seizure and that the

search warrant at issue comported with the Fourth Amendment.

Defendants argue that plaintiff lacks standing to challenge the seizure of this personal property

because it was taken from the WPD evidence room.  Defendants argue that since plaintiff lacked a

reasonable expectation of privacy in the property listed on the search warrant at the time of its seizure,

he may not now contest the search.  The concept of standing under the Fourth Amendment focuses on

whether the person challenging the legality of the search at issue was actually the "victim" of that search

or seizure.[32]  In order to have standing to contest a search, an individual must have "a legitimate

expectation of privacy in the invaded place."[33]  Here, the primary search of plaintiff and his vehicle was

conducted incident to his arrest in Wichita.  Plaintiff does not challenge the legality of that search in this

---

[31]*Saucier*, 533 U.S. at 201.

[32]*Rakas v. Illinois*, 439 U.S. 128, 132 (1978) (discussing *Jones v. United States*, 362 U.S. 257, 259 (1960)).

[33]*Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (quoting *Rakas*, 439 U.S. at 143).

action.  The secondary search that plaintiff does challenge was directed toward the WPD.  The Court agrees that plaintiff did not have a subjective or an objective reasonable expectation of privacy in the WPD evidence room.  Therefore, he does not now have standing to contest the legality of that search.

Moreover, even if plaintiff had standing, the warrant requirement was sufficiently met.  The Fourth Amendment protects against unreasonable searches and seizures.[34]  It applies to the states because it is incorporated into the due process clause of the Fourteenth Amendment.[35]  Under the Fourth Amendment, a search is per se reasonable if it is conducted pursuant to a warrant.[36]  Here, plaintiff does not challenge the sufficiency of the warrant, that it was supported by probable cause and that it described with particularity the things to be seized.  Rather, plaintiff asserts that the warrant was deficient because it "was never sworn to (as stated at the bottom of the search warrant)."  Yet the warrant states that only the "[c]ourt copy must be sworn to.  Defendant's copy should be signed but need not be sworn to."  Plaintiff is unable to show facts that suggest the original warrant was not sworn to.  More importantly, plaintiff is unable to articulate why any such deficiency on his copy violates the Fourth Amendment.

Plaintiff also challenges the validity of the warrant executed by ACPD detectives on the grounds that it violates K.S.A. § 22-2505, which governs who is authorized to execute a search warrant.  It states: "A search warrant shall be issued in duplicate and shall be directed for execution to all law

---

[34]U.S. Const. Amend. IV; *Soldal v. Cook County, Ill.*, 506 U.S. 56, 62 (1992).

[35]*Mapp v. Ohio*, 367 U.S. 643, 654 (1961).

[36]*See United States v. Green*, 178 F.3d 1099, 1106 (10th Cir. 1999).

enforcement officers of the state or to any law enforcement officer specifically name therein."[37]  Plaintiff submits that his copy of the executed warrant and the copy submitted by defendants have differences that suggest his copy was forged.  But it is undisputed that the two copies of the warrant have no substantive differences, i.e., none of the information is different.  Plaintiff only points to differences that suggest that the copies are not *exact* duplicates of one another, such as certain stylistic differences in the handwriting.

Even if defendants violated K.S.A. § 22-2505 in executing the warrant as plaintiff alleges, it does not necessarily implicate the Fourth Amendment.  Plaintiff only claims that his copy of the warrant is not an exact match to the copy defendants attach.[38]  He does not allege that the warrant lacked probable cause.  Likewise, he does not allege that defendants provided the judge with false information in the warrant affidavit.[39]  Plaintiff's assertion that the violation of this state statute violates his Fourth Amendment rights, misses the mark.  "Where a search warrant executed in violation of a state law otherwise complies with federal law, no Fourth Amendment claim may be sustained."[40]  Here, the Court finds that plaintiff has presented no evidence tending to show that the defendants violated the Fourth Amendment warrant requirements.  There is no evidence that would create a genuine issue of

---

[37]K.S.A. § 22-2505 (1995).

[38]Plaintiff also states that he was not provided a receipt for the property taken from the WPD evidence room.  He does not elaborate as to whether this is a separate basis for his Fourth Amendment claim.  The Court notes that the receipt is the copy of the search warrant and attached list of items seized.  Plaintiff attached this document (which states "Plaintiff's Copy" at the top), to his response memoranda.  Therefore, the Court considers this argument one and the same as plaintiff's argument that defendants failed to properly comply with K.S.A. § 22-2505.

[39]*See Clanton v. Cooper*, 129 F.3d 1147, 1154 (10th Cir. 1997).

[40]*J.S. Pawn, Inc. v. Nye*, No. 00-2184-CM, 2001 WL 238145, at *3 (D. Kan. Feb. 7, 2001); *see also Green*, 178 F.3d at 1105-06; *DeArmon v. Burgess*, 388 F.3d 609, 612 (8th Cir. 2004); *Clanton*, 129 F.3d at 1155 n.4 (citing *Baker v. McCollan*, 443 U.S. 137 (1979)).

material fact concerning whether the warrant was supported by probable cause or executed in a reasonable manner.  Therefore, plaintiff fails to allege facts sufficient to show a constitutional violation on this claim.

### 2. Eighth Amendment

Plaintiff alleges that defendants  Baucom and Santiago violated his Eighth Amendment rights when they illegally took control over his personal property.  Although Plaintiff did not  respond to defendants' motion for summary judgment on this claim, in his reply memorandum plaintiff asks the Court to liberally construe his pleadings and consider the Eighth Amendment arguments.  But plaintiff makes no attempt to respond to the defendants' arguments in favor of summary judgment on this claim. The Court deems plaintiff's utter failure to respond "tantamount to an express abandonment of any such claim."[41]  Even if the Court did  not consider the claim abandoned, plaintiff fails to allege sufficient facts to support an Eighth Amendment violation.  The Tenth Circuit explains:

> The purpose of the Amendment indicates that it contains a limitation on what types of state actors can violate it.  The Supreme Court has instructed that "the text of the Amendment suggests an intention to limit the power of those entrusted with the criminal-law function of government."  *Ingraham v. Wright*, 430 U.S. 651, 664, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (emphasis added). Consistent with this teaching, we conclude that only prison officials and those to whom they delegate penological responsibilities for prisoners have Eighth Amendment duties and attendant liabilities.[42]

There is no allegation, nor any suggestion in the record, that any of the defendants were prison officials. There is also no evidence to suggest that these defendants were delegated penological responsibilities.

---

[41]*Palmer v. Unified Gov't of Wyandotte*, 72 F. Supp. 2d 1237, 1250-51 (D. Kan. 1999).

[42]*Smith v.Cochran*, 339 F.3d 1205, 1213 (10th Cir. 2003).

Therefore, the Court finds that plaintiff fails to state a cognizable Eighth Amendment claim against these defendants.

### 3. Fourteenth Amendment

Plaintiff fails to allege facts sufficient to support either a substantive or a procedural due process claim under the Fourteenth Amendment.  His sole argument relies on his assertion that his personal property was illegally taken from the WPD evidence room at the time of the seizure.  Plaintiff may not maintain a claim of substantive due process deprivation under the Fourteenth Amendment because the Fourth Amendment provides the specific source of protection against unreasonable searches and seizures, which forms the basis for plaintiff's claim.  "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."[43]  Therefore, the Court declines to evaluate any pretrial deprivation of property or liberty that plaintiff asserts as the basis for a substantive due process claim.

To the extent plaintiff alleges sufficient facts to establish a procedural due process violation by these defendants, his claim also fails.  The Fourteenth Amendment provides, "individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.'"[44]  "There is no question that deprivation of property without due process gives rise to a claim under § 1983."[45]  To

---

[43]*Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Albright v. Oliver*, 510 U.S. 266, 274-75 (1994); *J.S. Pawn, Inc. v. Nye*, No. 00-2184-CM, 2001 WL 238145, at *4 (D. Kan. Feb. 7, 2001).

[44]*Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (quoting *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48 (1993)).

[45]*Montana v. Hargett*, 84 Fed. Appx. 15, 16 (10th Cir. 2003) (citing *Gillihan v. Shillinger*, 872 F.2d 935, 939 (10th Cir. 1989).

13

determine if plaintiff was denied procedural due process, the Court must conduct a two-part inquiry: "(1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process."[46] "'The existence of a property interest is defined by existing rules or understandings that stem from an independent source such as state law.'"[47]

K.S.A. § 22-2512 provides for custody and disposition of property seized under a search warrant.  That section provides:

> (1) Property seized under a search warrant or validly seized without a warrant shall be safely kept by the officer seizing the same unless otherwise directed by the magistrate, and shall be so kept as long as necessary for the purpose of being produced as evidence on any trial. The property seized may not be taken from the officer having it in custody so long as it is or may be required as evidence in any trial.
>
> . . .
>
> (3) When property seized is no longer required as evidence, it shall be disposed of as follows:
>
> (a) Property stolen, embezzled, obtained by false pretenses, or otherwise obtained unlawfully from the rightful owner thereof shall be restored to the owner;
>
> (b) money shall be restored to the owner unless it was contained in a slot machine or otherwise used in unlawful gambling or lotteries, in which case it shall be forfeited, and shall be paid to the state treasurer pursuant to K.S.A. 20-2801, and amendments thereto;
>
> (c) property which is unclaimed or the ownership of which is unknown shall be sold at public auction to be held by the sheriff and the

---

[46]*Clark v. City of Draper*, 168 F.3d 1185, 1189 (10th Cir. 1999); *Palmer*, 72 F. Supp. 2d at 1252.

[47]*Clark*, 168 F.3d at 1189 (quoting *Driggins v. City of Oklahoma City*, 954 F.2d 1511, 1513 (10th Cir. 1992); *see Palmer*, 72 F. Supp. 2d at 1252.

proceeds, less the cost of sale and any storage charges incurred in preserving it, shall be paid to the state treasurer pursuant to K.S.A. 20-2801, and amendments thereto;

(d) articles of contraband shall be destroyed, except that any such articles the disposition of which is otherwise provided by law shall be dealt with as so provided and any such articles the disposition of which is not otherwise provided by law and which may be capable of innocent use may in the discretion of the court be sold and the proceeds disposed of as provided in subsection (2)(b);

(e) firearms, ammunition, explosives, bombs and like devices, which have been used in the commission of crime, may be returned to the rightful owner, or in the discretion of the court having jurisdiction of the property, destroyed or forfeited to the Kansas bureau of investigation as provided in K.S.A. 21- 4206 and amendments thereto;

(f) controlled substances forfeited under the uniform controlled substances act shall be dealt with as provided under K.S.A. 60-4101 through 60-4126 and amendments thereto;

(g) unless otherwise provided by law, all other property shall be disposed of in such manner as the court in its sound discretion shall direct.[48]

At the time of seizure, plaintiff was provided the necessary notice required for due process because he was provided with a copy of the search warrant. "Once the property owner is informed that his property has been seized, he can turn to [] public sources to learn about the remedial procedures available to him. The City need not take other steps to inform him of his options."[49]  Now that plaintiff's criminal proceeding is final, it is unclear to the Court how the property at issue has been disposed of pursuant to K.S.A. § 22-2512(3), if at all.  Plaintiff contends that he is the rightful owner of

---

[48]K.S.A. § 22-2512 (Supp. 2004).

[49]*City of West Covina v. Perkins*, 525 U.S. 234, 241 (1999).

the items seized from the WPD evidence room, and therefore, they should all be returned to him.  He contends that K.S.A. § 22-2512(3)(a) does not apply to him because evidence from the criminal proceeding tends to show that the items seized did not belong to the Sheldons.  Defendants assert that plaintiff has no possessory interest in the property in question; therefore, they are not required to provide plaintiff with due process in disposing of the property.

Defendants assert that since the ACPD detective seized the evidence from the WPD evidence room, and not the plaintiff's home or body, he had no property interest in the items at the time they were seized.  The general rule is that "seized property, other than contraband, should be returned to its rightful owner once the criminal proceedings have terminated."[50]  In addition, "the government may not by exercising its power to seize, effect a [d]e facto forfeiture by retaining the property seized indefinitely."[51]  The Court is unpersuaded by defendants' argument that plaintiff lost all property rights to the items seized in the absence of evidence that a forfeiture proceeding was instituted, or that the items were otherwise disposed of in accordance with K.S.A. § 22-2512.

The Court finds that regardless of whether plaintiff had a protected property interest in the items seized from the WPD evidence room, he has been afforded an appropriate level of process, yet has chosen not to avail himself of it.  Plaintiff failed to allege how the City has denied him notice or an opportunity to be heard on his claim that he has been deprived of property.  A constitutional due

---

[50]*United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1212 (10th Cir. 2001).  The Tenth Circuit has explained the difference between derivative contraband and contraband per se.  A criminal defendant has no rightful expectation that per se contraband, or contraband that is intrinsically illegal in nature, will ever be returned.  *Id.* at 1212 n.13.  However, "a criminal defendant does have a legitimate expectation that other property, including property that may well be derivative contraband, will be returned to him once the criminal proceedings against him conclude, unless and until the government successfully forfeits that property."  *Id.*

[51]*Id.*

process violation that is actionable under § 1983 "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process."[52]

Plaintiff does not allege that the deprivation is due to some established state procedure. Instead, plaintiff alleges that defendants failed to follow state policy, i.e., K.S.A. § 22-2512, in disposing of the property in question once the criminal proceedings concluded.  Under Supreme Court doctrine, the appropriate remedy for such a deprivation may be found in the state courts:

> Although he has been deprived of property under color of state law, the deprivation did not occur as a result of some established state procedure. Indeed, the deprivation occurred as a result of the unauthorized failure of agents of the State to follow established state procedure. There is no contention that the procedures themselves are inadequate nor is there any contention that it was practicable for the State to provide a predeprivation hearing. . . . The State provides a remedy to persons who believe they have suffered a tortious loss at the hands of the State. See Neb.Rev.Stat. § 81-8,209 et seq. (1976). . . . The remedies provided could have fully compensated the respondent for the property loss he suffered, and we hold that they are sufficient to satisfy the requirements of due process.[53]

The Court finds that Kansas provides an adequate remedy for any property loss plaintiff suffered.  Plaintiff may file a motion for replevin in his criminal action, under K.S.A. § 60-1005(c), which provides that property that is in the possession or custody of an officer is subject to replevin, but requires such a motion to be filed "in the same proceeding out of which such process issued."[54]

---

[52]*Zinermon v. Burch*, 494 U.S. 113, 126 (1990).

[53]*Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986); *see also Hudson v. Palmer*, 468 U.S. 517 (1984); *Harmon v. Williams*, 77 Fed. Appx. 440, 441-42 (10th Cir. 2003); *Bridgeforth v. Field*, 153 F.3d 726 (Table), 1998 WL 440488, at *2 (10th Cir. July 17, 1998), *cert. denied*, 525 U.S. 1154 (1999).

[54]K.S.A. § 60-1005(c).

17

Alternatively, plaintiff could pursue a remedy in tort for conversion under state law.  Either way, the state provides a remedy for property deprivation that plaintiff has failed to pursue.  Therefore, the Court finds that plaintiff is unable to sustain a constitutional violation of due process under § 1983.

### C. Defendant Skiles

Plaintiff alleges no separate factual basis for any claim against defendant Skiles, aside from his role as a supervisor over defendants Baucom and Santiago.  Because the Court finds that there is no evidence of any constitutional violations committed by defendants Baucom and Santiago, plaintiff may not maintain an action for supervisory liability against defendant Skiles. "To establish a supervisor's liability under § 1983 [plaintiff] must show that 'an 'affirmative link' exists between the [constitutional] deprivation and either the supervisor's 'personal participation, his exercise of control or direction, or his failure to supervise.'"[55]  Because defendants Baucom and Santiago caused no deprivation of plaintiff's rights, defendant Skiles may not be held liable solely on the basis that he was their supervisor.[56]

Plaintiff does not name the City of Arkansas City in his Complaint as a party, nor does he assert claims against the defendants in their official capacities.  Municipalities and other local governments may be sued under § 1983 for constitutional torts.[57]  However, a local government may not be held liable for tortious acts committed by its employee if the employee committed no constitutional violation.[58]  In order to establish liability, the government official must have committed a constitutional violation, and

---

[55]*Green v. Branson*, 108 F.3d 1296, 1302  (10th Cir. 1997) (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir.1988)).

[56]*See Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998).

[57]*Id.*

[58]*Id.*  This rule is inapplicable, however, if the individual defendants are not liable on the grounds of qualified immunity.  *Id.* at 1317.  "Municipalities enjoy no such shield."  *Id.* (internal quotation omitted).

18

the entity itself must have been the "moving force" behind the alleged deprivation, so the entity's "policy or custom" must have contributed toward the constitutional violation."[59]  Here, even if plaintiff asserts an official capacity claim, because the Court finds defendants Baucom and Santiago committed no constitutional violation, plaintiff fails to state a claim of municipal liability.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion for Summary Judgment (Doc. 139) is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 20th day of October 2005.

 S/   Julie A. Robinson
Julie A. Robinson
United States District Judge

---

[59]*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694-95 (1978); *Graham*, 473 U.S. at 166; *Myers*, 151 F.3d at 1316.

Memorandum and Order Granting Defendants' Motion for Summary Judgment, *Wilkins v. Skiles*, 02-3190-JAR